# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JASMINE PRATER, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-07-2349 |
| | § | |
| COMMERCE EQUITIES | § | |
| MANAGEMENT COMPANY, INC., | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Jasmine Prater, Christina Stroyick, and Angelica Murillo sued their former employers, Commerce Equities Management Company, Inc.; Commerce Equities Inc.; Commerce Equities – Settler's Ranch Ltd.; Bayou on the Bend Holdings, Ltd.; Mid Rise Builders, LLC; and Matthew G. Dilick. The plaintiffs alleged that the defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, by failing to pay overtime for hours worked in excess of forty hours in a work-week. The plaintiffs also alleged retaliation in violation of the FLSA.

After extensive litigation, the parties agreed to settle their disputes. The settlement agreement covers everything except attorneys' fees. The parties have filed a Joint Motion to Approve FLSA Settlement, along with the proposed Settlement Agreement. The Agreement contains a confidentiality provision. The settlement amounts have been redacted from the pleadings and appear unredacted in attached exhibits. This court previously granted

two motions to seal exhibits, (Docket Entry Nos. 62, 65).  The parties have filed unopposed
motions to seal the remaining exhibits that contain settlement amounts, (Docket Entry Nos.
47, 55).  The plaintiffs moved for an award of attorneys' fees in the amount of $121,653.00,
(Docket Entry No. 50), which the defendants opposed, (Docket Entry No. 54).  The plaintiffs
replied to the defendants' opposition, (Docket Entry No. 60), the defendants filed a surreply,
(Docket Entry No. 63), and the plaintiffs replied to the surreply, (Docket Entry No. 67).

Based on a careful review of the motions, responses; and replies; the parties'
submissions; and the applicable law; this court approves the FLSA settlement and awards
$117,553.04 in attorneys' fees.  The prior orders granting the motions to seal are withdrawn.
The motions to seal are denied.  The reasons for these rulings are explained below.

## I.    Background

On January 9, 2007, Prater retained Steele Sturm PLLC to represent her in pursuing
her FLSA claims.  Two days later, Steele Sturm sent the defendants a demand letter asserting
FLSA violations.  On January 16, 2007, Dilick, Prater's boss, sued Prater in small-claims
court to recover an employment bonus.  Dilick told Prater that he would settle the small-
claims court suit if she agreed to release her FLSA claims.  She did not do so.  The small-
claims court case was dismissed on May 15, 2007.

Stroyick and Murillo contacted Steele Sturm in March and July 2007, respectively,
to join Prater in asserting their FLSA claims against the defendants.  The plaintiffs filed this
lawsuit on July 18, 2007 with a motion for collective action.  On August 31, 2007, the
defendants made a settlement offer of $5,000 to Prater, $2,500 to Stroyick, and $1,000 to

2

Murillo.  Defense counsel describes the offers as "extremely generous" and "well in excess of what Plaintiffs could recover in this case" as unpaid overtime under the FLSA.  (Docket Entry No. 54, Ex. A).  According to defense counsel, Prater's damages were $2,233.00, Stroyick's were $1,055.42, and Murillo's were $252.82.  The defendants also offered to "pay costs accrued to date and reasonable attorney's fees to date, as determined by the Court."  (Docket Entry No. 54, Ex. A).  The settlement offer stated that Charles Vatterott, a part-owner of Commerce Equity Management and Stroyick's uncle, would be personally responsible for paying part of the settlement.  The offer did not mention any other individual owners of Commerce Equity Management.  Stroyick has alleged that Dilick threatened her uncle that if she and the other plaintiffs proceeded with this FLSA lawsuit, Dilick would hold Vatterott responsible for paying any judgment or settlement.  (Docket Entry No. 26, Ex. D, Stroyick Affidavit).

The plaintiffs rejected the settlement offer on September 14, 2007.  The plaintiffs moved for protection against a variety of alleged retaliatory acts by Dilick.  After a hearing held on January 9, 2008, this court granted the plaintiffs' motion for a protective order and required the defendants to send present and former employees a letter informing them of the antiretaliation provisions of the FLSA.

On November 19, 2007, this court granted the plaintiffs' motion for conditional certification as to two groups of employees.  One group was leasing agents who were paid on an hourly basis.  The second group was office employees paid on a salary basis, including leasing managers, assistant property directors, property directors, and marketing directors.

Notice was sent to 8 current employees and 24 former employees.  No additional plaintiffs opted in.

On March 21, 2008, this court granted defense counsel's motion to withdraw.  New counsel appeared to represent the defendants.  On July 23, 2008, a mediation was held and the parties agreed to a settlement.  The settlement amounts exceeded the previous offers.

## II.   Settlement Approval

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of unpaid wages, or their unpaid overtime compensation, as the case may be . . . ." 29 U.S.C. § 216(b).  FLSA claims may be compromised after the court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b).  *Lynn's Food Stores, Inc. v. United States*, *U.S. Dep't of Labor*, 679 F.2d 350, 1353 (11th Cir.1982).[1]  If the settlement reflects "a reasonable compromise over issues," the court may approve it.  *Id.* at 1354.

In this case, there are genuine disputes over whether the FLSA applies to all the employees, the amount of backpay due, and whether and to what extent the defendants retaliated against the plaintiffs for pursuing their FLSA rights.  This court has reviewed the settlement agreement and finds that the amount to be paid to each plaintiff is fair and reasonable.   This court approves the proposed settlement as a fair and reasonable

---

[1] *Lynn's* requires judicial approval of a *compromise* of FLSA claims.  Where a defendant offers a plaintiff full compensation for her FLSA claim, no compromise is involved and judicial approval is unnecessary. *Mackenzie v. Kindred Hospitals East, L.L.C.*, 276 F.Supp.2d 1211, 1217 (M.D. Fla. 2003).  The settlement in this case is a compromise of disputed claims.

compromise of a bona fide dispute under the FLSA.

## III.   Attorneys' Fees

### A.   The Legal Standard

The FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added). Fee awards are mandatory for prevailing plaintiffs in FLSA cases. *See Kreager v. Solomon & Flanagan P.A.*, 775 F.2d 14 (11th Cir. 1985). The plaintiffs are clearly prevailing parties in this case. The Supreme Court has held that a party is a "prevailing party" for the purposes of an attorneys' fee award if the party "succeeded on any significant claim affording it some of the relief sought." *Tex. State Teachers Ass'n v. Garland Indp. Sch. Dist.*, 489 U.S. 782, 791 (1989). This includes a party who benefits from a settlement that is "judicially sanctioned." *Roberson v. Giuliani*, 346 F.3d 75, 79-80 (2d Cir. 2003) (quoting *Buckhannon Board & Care Home*, *Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)).

Courts must use the "lodestar method" to "assess attorneys' fees" in FLSA suits. *Strong v. Bellsouth Telecomm.*, *Inc.*, 137 F.3d 844, 850 (5th Cir. 1998). The district court must first determine the reasonable number of hours expended on the litigation and the reasonable hourly rate for the participating attorney. *Id.* The lodestar is then computed by multiplying the number of hours reasonably expended by the reasonable hourly rate. *Id.* The party seeking attorneys' fees bears the initial burden of submitting adequate documentation

5

of the hours reasonably expended and of the attorneys' qualification and skill.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).  Although the lodestar method effectively replaced the balancing test set forth in *Johnson v. Georgia Highway Express*, *Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), those factors may still be considered.  After calculating the lodestar, the court must consider whether to adjust the fee upward or downward.  The most important factor to consider is the results obtained.  If the success is limited, the lodestar should be reduced to reflect that.  But the fee award should not be simply proportionate to the result obtained.  *Andrews v. United States*, 122 F.3d 1367, 1376 (11th Cir. 1997).  "Given the nature of claims under the FLSA, it is not uncommon that attorneys' fee requests will exceed the amount of judgment in the case."  *Powell v. Carey Intern.*, *Inc.*, 547 F.Supp.2d 1281, 1286 (S.D. Fla. 2008).

### B.    Lodestar Calculation

The first step in computing the lodestar is determining a reasonable hourly rate.  The prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community is the established basis for determining a reasonable hourly rate.  *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).  The party seeking fees bears the burden of establishing the market rate and should present the court with evidence from which the court can determine the reasonableness of the proposed rate.  *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996).  Generally, the reasonable hourly rate for a particular community is established thorough affidavits of other attorneys of similar caliber practicing in that community.  *Tollett*, 285 F.3d at 357 (citing *Watkins v. Fordice*, 7

6

F.3d 453, 458 (5th Cir.1993)).  To establish the reasonableness of the requested rate, counsel "must produce satisfactory evidence – in addition to [his] own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Deltatech Constr.*, *LLC v. The Sherwin-Williams Co.*, No. Civ.A.04-2890, 2005 WL 3542906, at \*3 (E.D.La. Nov. 3, 2005) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)); *see also Watkins v. Input/Output*, *Inc.*, 531 F.Supp.2d 777, 784 (S.D. Tex. 2007) ("The evidence to support an hourly rate entails more than an affidavit of the attorney performing the work but must also address the rates actually billed and paid in similar lawsuits").  In addition, the court may use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services.  *Davis v. Board of School Commissioners of Mobile County*, 526 F.2d 865, 868 (5th Cir. 1976).

The plaintiffs were represented by the law firm Steele Sturm PLLC.  The firm used a billing rate of $275 per hour for Charles Sturm, $225 per hour for Ravi Sandill, $205 or $225 per hour for Kimberly Goodling, and $205 per hour for A. Nigram.  Howard Steele's affidavit states that he currently charges between $315 and $350 per hour, higher than the $275 or $295 per hour he billed at in this case.  Steele's affidavit recites his experience in employment law and his reputation in the Houston legal community.  Steele points to another case in which he and his law firm received a fee award and the rate awarded in that case.  *See Howe v. Hoffman-Curtis Partners, LLP,* 215 Fed. Appx. 341, 2007 WL 329140 (5th Cir. 2007).  Steele also submitted the Texas State Bar's "Hourly Rates in 2005 Report," which

7

shows that the median hourly rate for labor-employment attorneys in Texas was then $275 per hour.  (Docket Entry No. 50, Ex. B-2).  The record shows that the hourly rates submitted by Steele Sturm are consistent with prevailing Houston market rates for attorneys with comparable experience and are reasonable.

The second step in the lodestar analysis is to determine the number of hours reasonably expended on the litigation.  To determine whether hours were reasonably expended, the application should include "contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir.1998).  "Hours that are excessive, redundant, or otherwise unnecessary are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Id.* (internal quotations and citations omitted).  Fee applicants bear the burden of establishing the appropriate hours and hourly rates and that they exercised billing judgment. *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006); *see also Walker v. City of Mesquite, Tex.*, 313 F.3d 246, 251 (5th Cir. 2002); *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996).  Billing judgment requires documentation of the hours charged and of hours not charged because they were unproductive, excessive, or redundant. *Saizan*, 448 F.3d at 799. The proper remedy for omitting evidence of billing judgment is not a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment. *Id.*; *Walker*, 313 F.3d at 251.

Steele Sturm submitted billing records for each of the lawyers working on this case, which this court has reviewed.  Lead counsel Steele submitted an affidavit describing the nature and amount of the work performed.  (Docket Entry No. 50, Ex. B).  Steele also submitted the following summary of the hours spent and amounts billed in the motion for fees:

| | | |
|---|---|---|
| Before Complaint Filed | | |
| Case management | 9.55 | $ 1,916.75 |
| Research and client communications | 85.85 | $17,941.50 |
| Matters related to retaliation (including responding to the small claims case) | 53.35 | $11,884.75 |
| | | |
| After Complaint Filed | | |
| Case management | 42.1 | $9,261.00 |
| Document and discovery analysis, discovery motions (including motion for protective order) | 144.4 | $28,415.00 |
| Other motions (collective action, notice) | 129.8 | $30,959.50 |
| Mediation and settlement | 40.2 | $10,173.50 |
| Application for Attorney's Fees | 46.8 | $11,101.00 |

Steele Sturm spent a total of 552.05 hours in prosecuting this action, for a total of $121,653.00.  The effective rate is $220 per hour.  Steele asserts that over $4000.00 in fees were excluded from the total, demonstrating the requisite "billing judgment."

The defendants argue that the number of hours is excessive.  The defendants challenge the hours spent on defending Prater in the small-claims court suit filed by Dilick, in seeking a collective action, in sending more than one lawyer to mediation, and in preparing the fee application.

9

1.        *The Small-Claims Court Suit*

The defendants contend that the small-claims court suit Dilick filed against Prater was unrelated to the FLSA litigation and that the plaintiffs cannot recover the fees Prater incurred in defending that lawsuit.  The defendants argue that the attorneys'-fee provision in the FLSA does not permit recovery of fees for "unrelated litigation in an entirely different forum."  (Docket Entry No. 54, at 6).  The defendants also contend that the small-claims court lawsuit was not retaliation for Prater's assertion of FLSA rights.  "[T]o find that a state suit is a prohibited act of retaliation," a plaintiff must show that "(1) the suit was filed with retaliatory motive, and (2) that the suit lacks a reasonable basis in fact or law."  *Martinez v. Deaf Smith County Grain Processors*, 583 F.Supp. 1200, 1201 (N.D. Tex. 1984).  The defendants note that Dilick sought recovery of the salary advance that was the basis of his small-claims suit in an e-mail on January 8, 2007, three days before Prater made her FLSA demand.  The defendants argue that the small-claims court suit was not baseless merely because it was dismissed.  They argue that Prater had agreed to repay the salary advance if she left her employment within six months of receiving it and emphasize Texas law allowing an employer to recover an unearned salary advance.  The defendants also argue that *res judicata* bars Prater from recovering fees in this action because the small-claims court judge denied her request for attorneys' fees in that case.  They assert that $11,584.75 should be eliminated from the lodestar calculation.

*Res judicata*, or claim preclusion, does not preclude the plaintiffs from recovering the fees Prater incurred in responding to the small-claims court lawsuit Dilick filed against her.

10

Claim preclusion has four elements: (1) the parties in the subsequent action are identical to, or in privity with, the parties in the prior action; (2) the judgment in the prior case was rendered by a court of competent jurisdiction; (3) there has been a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005), *cert. denied*, 547 U.S. 1055, 126 S.Ct. 1662, 164 L.Ed.2d 397 (2006). Here, neither the parties nor the claims are the same. The small-claims suit and this case involve different parties and the state-court suit did not involve an FLSA or retaliation claim. The fact that Dilick sent an e-mail demanding payment from Prater before her lawyer sent an FLSA demand does not negate the retaliatory inference created by filing a small-claims court lawsuit five days after the FLSA demand and telling Prater that if she dropped the FLSA claim, the lawsuit would be dismissed and the underlying claim released.

Although the defendants disputed the retaliation claim, and the parties settled, the state-court suit was an integral part of the plaintiffs' retaliation claim. The fees incurred in defending that suit are related to this FLSA case. *See Broome v. Biondi*, 17 F.Supp.2d 230, 234 (S.D.N.Y. 1997) (no reduction in attorneys' fees to third-party defendant was warranted for fees incurred in defending state-law defamation claims, even if state law did not allow for attorney fees, if such claims were inextricably connected to successful countersuits, because the legal actions against the third-party defendant formed a substantial portion of her unlawful housing retaliation claim); *United States Football League v. National Football League*, 887 F.2d 408, 414 (2d Cir.1989), *cert. denied*, 493 U.S. 1071, 110 S.Ct. 1116, 107

11

L.Ed .2d 1022 (1990) (concluding that time spent on claims related to the central claim and on alternative means of relief, that time was fully compensable); *Hensley*, 461 U.S. at 434 (attorney's fee award will "[n]ormally . . . encompass all hours reasonably expended on the litigation"). This court will not grant a reduction for time spent on the small claims court case.

### 2.    *Collective Action*

The defendants argue that the fees requested for pursuing a collective action, $30,959.50, should not be included because the notice of collective action yielded no additional plaintiffs. The defendants assert that the plaintiffs are not entitled to these fees because they were unsuccessful in pursuing a collective action.

This argument is not persuasive. When the plaintiffs sought collective action treatment, there were other similarly situated employees who could have opted in. The defendants opposed the motion, requiring the plaintiffs to incur fees to establish that the requirements for conditional certification had been met. This court granted the motion for conditional certification. The plaintiffs' counsel reasonably incurred fees in pursuing the collective action. Two plaintiffs had already joined before the complaint was filed. The fact that additional plaintiffs did not join does not defeat the reasonableness of the fees expended in pursuing collective action treatment.

### 3.    *Two Lawyers at the Mediation Proceeding*

The defendants argue that it was unnecessary for two of the plaintiffs' lawyers to attend the mediation proceeding on July 23, 2008. Steele billed 10.20 hours ($3,009.00) and

12

Sandill billed 9.40 hours ($2,115.00) for preparing for, and representing the plaintiffs at, the mediation. The defendants contend that one attorney was enough, noting that defense counsel appeared alone. The defendants assert that $2,115.00 in fees should be deducted from the lodestar amount.

The plaintiffs respond that it was reasonable and necessary to have both Steele and Sandill at the mediation. Sandill was the primary contact with the plaintiffs and "had the best grasp of the minutiae of the case." Steele, the attorney in charge of the case, was at the mediation to negotiate and finalize the settlement. The plaintiffs assert that each attorney made a distinct and important contribution.

Having Sandill, who billed at a lower rate than Steele, perform most of the work involving the facts and documents of the case, does show the exercise of billing judgment. However, it is not appropriate to include fees for both lawyers to attend the mediation. The factual and legal issues in this case were neither difficult nor complex. Steele's expertise is in employment law. The case involved a limited set of facts. The mediation could have been handled by Steele alone, an experienced employment attorney. *See Lewis v. Hurst Orthodontics*, 292 F.Supp.2d 908, 910 (W.D. Tex. 2003) (finding that two attorneys' preparation for and attendance at mediation were "duplicative efforts that should have been avoided" and excluding hours for the lower-billing attorney); *Mardirossian v. Guardian Life Ins. Co. of America*, 457 F.Supp.2d 1038, 1050 (C.D. Cal. 2006) (excluding hours billed by second attorney at mediation because case was "relatively straightforward and involved a limited set of facts"). The lodestar is reduced by $2,115.00. *See In Re Mullins*, 84 F.3d 459,

13

467 (D.C. Cir. 1996) ("Three attorneys bill 2.5 hours each for attending a meeting together and, to avoid reimbursement for duplication of effort, we will deduct the fees incurred by the two lowest-billing attorneys.").

### 4. *The Fee Application*

The defendants contend that plaintiffs' counsel spent an excessive amount of time preparing the attorneys' fees application.  The defendants assert that it took them 35 hours to prepare a response to the plaintiffs's motion for fees and that "it should not have taken Plaintiffs more time to prepare their Application than it took Defendants to respond."  The defendants argue that they "had the more difficult and time-consuming task of analyzing and responding to Plaintiffs' claims for fees in its Application, as opposed to Plaintiff's mere assertions of its right to collect certain fees."  (Docket Entry No. 54, at 9).   The defendants assert that the plaintiffs should not be compensated for any more than 30 hours for preparing the fee application and request a reduction of $3,984.96.  The plaintiffs assert that 46.8 hours was an appropriate amount of time to spend preparing the fee application.  They request an additional $7,393.50 in fees for preparing a reply to the defendants' motion, (Docket Entry No. 60), and $350.00 for preparing a surreply, (Docket Entry No. 67).

In general, when a plaintiff is awarded reasonable attorneys' fees, the plaintiff is also entitled to an award of reasonable attorneys' fees in connection with the time spent to prepare the fee application.  *See*, *e.g.*, *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999); *Reiter v. Metro. Transp. Auth.*, 01 Civ. 2762, 2007 WL 2775144, at *17 (S.D.N.Y. Sept. 25, 2007) ("It is settled that the time spent on a fee application is itself compensable.").  Fee applications

14

do not typically involve novel or complex legal issues and the fees claimed for preparing them will be reduced if excessive.  In light of the plaintiffs' counsel's prior experience with FLSA cases and fee applications, the 46.8 hours claimed for preparing this fee application is excessive.  It is reduced to 30 hours.  *See West v. Aetna Life Ins. Co.*, 188 F.Supp.2d 1096, 1102 (N.D. Iowa 2002) (concluding, in an ERISA case, that 41 hours to prepare fee application was excessive because it is a "routine, largely clerical task"); *Brock v. Wright*, 2005 WL 2459112, at *2 (W.D.N.Y. Oct. 4, 2005) (concluding, in a Section 1983 case, that 30.2 hours to prepare fee application was excessive in light of counsel's prior experience with such matters); *Carlson v. United Academics-AAUP/AFT/ APEA/AFT-CIO*, 2002 WL 487179, at *4 (D. Alaska Mar. 12, 2002) ("In this day and age of computerized records, accounting programs, and computer databases storing briefing records, much of the preparation of a fee application should usually be delegated to a secretary or paralegal. The attorney need only allot such time as is necessary and prudent to review billing records, statements, and affidavits for accuracy.").

Reducing $2,115.00 (unnecessary lawyer at mediation) and $3,984.96 (excessive fees for preparing fee application) from the total amount submitted by plaintiffs, the resulting lodestar is $117,553.04.

### C.    Lodestar Adjustment

The lodestar is presumptively reasonable and should be modified only in exceptional cases.  *Saizan*, 448 F.3d at 800.  A district court may decrease or enhance the lodestar based on factors first set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19

(5th Cir.1974).[2]  Some of these factors are subsumed in the initial lodestar calculation and should not be double counted.  *Saizan*, 448 F.3d 800.  The most critical factor in determining the reasonableness of a fee award is the degree of success obtained.  *Id.*  Of the *Johnson* factors, a court should also give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation, and ability of counsel.  *Id.*  The defendants assert that the "overall lack of success obtained by Plaintiff with respect to the settlement amounts collected as compared to Defendants' fair and reasonable offers of judgment at the outset of litigation" mandates reducing the requested fees by 40-50% ."  The defendants contend that the plaintiffs' success was limited in relation to what they could have received at the outset of litigation.  (Docket Entry No. 54, at 12).

This argument is not persuasive.  The settlement agreement gives the plaintiffs amounts that exceed the previous settlement offers and greatly exceed defense counsel's assessment of the plaintiffs' damages.  The plaintiffs achieved more than a "limited degree of success."  A reduction of the lodestar amount on this basis is unwarranted.  *See Coutin v. Young & Rubicam*, 124 F.3d 331, 341 (1st Cir. 1997) (finding that damages of three times the settlement offer was not "limited" in any relevant sense and holding that "it is a mistake

---

[2]  The *Johnson* factors are: (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

of law to reduce an award of attorney's fees in a civil rights case in response to a plaintiff's rejection of a settlement offer when the subsequent judgment exceeds that offer"); *Corder v. Gates*, 947 F.2d 374 (9th Cir. 1991) (trial judge abused discretion by finding that plaintiff had limited success and reducing attorneys' fees by 20% because the jury verdict of $24,006 exceeded previous settlement offer of $6,000); *Cf. Haworth v. Nevada*, 56 F.3d 1048, 1051 (9th Cir. 1995) (reducing requested fees in FLSA case where plaintiffs rejected settlement offer of approximately $330,000 and recovered $91,782.54 at trial); *Mannick v. Kaiser Foundation Health Plan, Inc.*, 2007 WL 2892647, at *11 (N.D. Cal. Sep. 28, 2007) (reducing requested fees where plaintiff rejected settlement offer of $251,000 plus fees and ultimately settled for $150,000 plus fees).

The other *Johnson* factors do not support adjustment. The plaintiffs' counsel took the case on a contingency basis. Despite the risk a firm assumes in a contingency case, the contingent nature of a case cannot serve as a basis for an enhancement of attorneys' fees. *City of Burlington v. Dague*, 505 U.S. 557, 567, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992); *Shipes v. Trinity Indus.*, 987 F.2d 311, 323 (5th Cir. 1993). Although a significant amount of time was spent on this case, there is no evidence that the plaintiffs' counsel had to refuse other work. There is no evidence that the plaintiffs were undesirable clients or did not fully cooperate with their attorneys. The *Johnson* factors do not warrant an upward or downward adjustment of the lodestar.

**IV.    The Motions to Seal**

The settlement agreement contains a confidentiality provision. The parties redacted

17

the settlement amounts in all pleadings concerning the settlement and included the unredacted amounts in attached exhibits. The plaintiffs moved to seal Exhibit B to the joint motion for settlement approval and Exhibit F to the motion for attorneys' fees, (Docket Entry No. 47), and the defendants moved to seal Exhibit H to their response to the plaintiffs's motion for fees, (Docket Entry No. 55). The parties argue that their interest in the confidentiality of the settlement amounts outweighs the public's common-law right of access to judicial records.

Courts do not typically examine or approve settlement agreements, which are purely private contracts. However, when a settlement must be approved by a court, the settlement becomes part of the judicial record.[3] *Jessup v. Luther*, 277 F.3d 926 (7th Cir. 2002) (noting that when a settlement is entered into the court's file under seal it becomes part of the judicial record); *Boone v. City of Suffolk*, 79 F.Supp.2d 603 (E.D. Va. 1999) (treating FLSA settlement approved by court as judicial record).

"Courts have recognized that the public has a common law right to inspect and copy

---

[3] Purely private settlement agreements present a situation entirely different than the settlement in this case. In the context of private settlements, disclosing the settlement amount may be inconsistent with the policy of promoting settlements among litigants. "[W]hile there is simply no legitimate public interest to be served by disclosing settlement agreements, the parties to the agreement are likely to have a compelling interest in keeping the settlement amount confidential." *Grove Fresh Dist., Inc. v. John Labatt Ltd.*, 888 F.Supp. 1427, 1441 (N.D.Ill.1995), *aff'd* 134 F.3d 374, *cert. denied* 525 U.S. 877, 119 S.Ct. 180, 142 L.Ed.2d 147 (1998). Keeping private settlement agreements confidential serves the interests of both the public and the parties, because it advances the "strong public interest in, and policy objectives furthered by, promoting settlement." *Id.* Consequently, courts should "honor confidentialities that are bargained-for elements of settlement agreements." *Id.* In the context of judicially approved settlements, however, that policy is weighed against the strong presumption that the public has a common-law right of access to judicial records.

judicial records," but that "right is not absolute." *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (citing *Nixon v. Warner Communications*, *Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978)). "'Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes.'" *Id.* In some cases, such as those involving "trade secrets, the identity of informants, and the privacy of children," *Jessup*, 277 F.3d at 928, or those in which information could be used for "scandalous or libelous purposes," *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995), the interest in secrecy is compelling. However, "'the district court's discretion to seal the record of judicial proceedings is to be exercised charily.'" *Van Waeyenberghe*, 990 F.2d at 848 (quoting *Federal Savings & Loan Ins. Corp. v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987)). The presumption that judicial records are open to the public is based on the nature of democracy and the "citizen's desire to keep a watchful eye on the workings of public agencies." *Nixon*, 435 U.S. at 598, 98 S.Ct. at 1306. A judge is "the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal" and must not simply "rubber stamp a stipulation to seal the record." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999).

"In exercising its discretion to seal judicial records, the court must balance the public's common law right of access against the interests favoring nondisclosure." *Van Waeyenberghe*, 990 F.2d at 848. A "court's approval of a settlement or action on a motion are matters which the public has a right to know about and evaluate." *Bank of America*

19

*National Trust & Saving Association v. Hotel Rittenhouse Associates*, 800 F.2d 339 344 (3d Cir. 1986).   In the FLSA context, there is a strong presumption in favor of keeping the settlement agreements in FLSA wage-settlement cases unsealed and available for public review.  The public's interest in accessing the settlement agreement, including the settlement amount, often outweighs any interest in confidentiality.  *See Perry v. Nat'l City Bank*, Case No. 05-cv-891-DRH, 2008 U.S. Dist. LEXIS 10990, at *3 (S.D. Ill. Feb. 14, 2008) ("Given the nature of the FLSA suit . . . the Court finds it important for the settlement to be made accessible to the public . . ."); *Bartelloni v. Decastro*, Case No. 05-80910-CIV-COHN, 2007 WL 2155646 (S.D. Fla. July 26, 2007) (confidentiality provision in FLSA settlement was insufficient reason to seal settlement agreement); *West v. First Franklin Fin. Corp.*, C.A. No. 06-2064-KHV, 2007 U.S. Dist. LEXIS 30963, at *3 (D. Kan. Apr. 25, 2007) (rejecting the parties' argument that "the confidentiality of the awards is a material element of the [FLSA] settlement agreement"); *see also Hill v. Kentworth Truck Co.*, 2008 U.S. Dist. LEXIS 65495 (S.D. W. Va. Aug. 26, 2008) (defendant in wrongful death case in which minor was a beneficiary moved to seal settlement amount; court concluded that "the amount of the settlement is not a tangential matter . . . but rather goes to the heart of the petition inasmuch as the court is being asked to approve the amount of the settlement and the distribution thereof.  Without access to this information, the public has no means of judging the product of the court in this case").  Absent an extraordinary reason, sealing a settlement agreement in an FLSA case from public scrutiny would "thwart the public's independent interest in assuring that employee's wages are fair and thus do not endanger 'the national health and

well-being.'"   *Stalnaker v. Novar Corp.*, 293 F.Supp.2d 1260, 1264 (M.D. Ala. 2003) (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706-07, 65 S.Ct. 895, 89 L.Ed. 1296 (1945)).

The parties have not presented an "extraordinary" reason to place the exhibits containing the settlement amounts under seal.  The fact that the settlement agreement contains a confidentiality provision is an insufficient interest to overcome the presumption that an approved FLSA settlement agreement is a judicial record, open to the public. Moreover, a "business's general interest in keeping its legal proceedings private does not overcome the presumption of openness in the circumstances presented in this case." *Stalnaker*, 293 F.Supp.2d at 1264.  The motions to seal are denied.

## V.      Conclusion

The joint motion to approve the FLSA settlement is granted.  The plaintiffs' request for attorneys' fees is granted and the plaintiffs are awarded fees in the amount of $117,553.04.  The prior orders granting motions to seal the exhibits containing settlement amounts, (Docket Entry Nos. 62, 65), are withdrawn.  The motions to seal are denied.  Final judgment is entered by separate order.

SIGNED on December 8, 2008, at Houston, Texas.

Lee H. Rosenthal
United States District Judge